JOHN ALEXANDER *et al.* v. T. L. LOGAN *et al.*

No. 12,702. ( 70 Pac. 339.)

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE—*Exempt Property.* A chattel mortgage on personal property exempt by law to resident heads of families, not given with the joint consent of both husband and wife, when that relation exists, and not executed by both, is void.

Error from Pawnee district court; J. E. ANDREWS judge. Opinion filed October 11, 1902. Affirmed in part and reversed in part.

*W. H. Vernon,* and *H. F. Mason,* for plaintiffs in error.

*G. P. Cline,* and *H. S. Rogers,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: T. L. Logan, as mortgagee, replevied from J. A. and E. A. Rhodes certain property covered by a mortgage, purporting to have been signed by J. A. and E. A. Rhodes, husband and wife. E. A. Rhodes answered denying the execution of the mortgage, and alleging that part of the mortgaged property was ex-

empt, and that, as to such property, the mortgage was void. John Alexander interpleaded, claiming the remainder of the property. At the trial a general verdict was returned for the plaintiff and judgment rendered thereon, to reverse which John Alexander and E. A. Rhodes prosecute this proceeding.

It is urged that the court erred in the admission of certain testimony given by B. W. Reed and the plaintiff below. The testimony was hearsay. We are of the opinion, however, that, as applied to the issues in this case, it was not sufficiently important or prejudicial to justify a reversal of the judgment.

On the part of E. A. Rhodes, complaint is made that the court erred in giving instruction No. 9. It reads:

"No mortgage of exempt personal property is of any force unless the same is given with the joint consent of husband and wife, where that relation exists; however, it is not necessary that this consent should be evidenced by writing. It is enough to bind both husband and wife, if the husband executed the mortgage with the knowledge and consent of the wife, or if she knew the mortgage was to be given by the husband to secure Logan, and remained silent till Logan parted with his money; or, if, after the mortgage was executed and delivered, the wife received knowledge of its existence and failed to make objection within a reasonable time, then this is proper evidence that she adopted and ratified the act of the husband in giving the mortgage. You must take into consideration all the circumstances surrounding the giving of the mortgage, the acts of the parties in showing the property, the conversations at the time, and all the antecedent facts connected with the loaning of the money. If from this evidence you reach the conclusion that Mrs. Rhodes knew Logan expected to take the mortgage, and that her husband was going to execute the mortgage and she kept silent, or if she afterward learned that the mortgage had been executed and had opportunity to notify Logan that she had not authorized

the same, and did not expect to be bound thereby, and failed to do so in a reasonable time, then it would be your duty to find for the plaintiff as against defendants, Rhodes and wife.''

This instruction does not state the law correctly, and was prejudicial to the contentions of Mrs. Rhodes. A chattel mortgage on exempt personal property, executed by the husband alone, is void, notwithstanding the wife knew at the time that her husband intended giving the mortgage and that the mortgagee would accept it, and made no objections thereto, or that she afterward learned that the mortgage had been given and had an opportunity to, and did not, inform the mortgagee that she had not signed the mortgage and would not be bound thereby. Nor will such conduct on her part estop her to deny its execution. The statute in force at the time this mortgage was executed was section 3, chapter 120, General Statutes of 1897 :

'' It shall be unlawful for either husland or wife ( where that relation exists ) to create any lien by chattel mortgage or otherwise upon any personal property owned by either or both of them, and now exempt by law to resident heads of families from seizure and sale upon any attachment, execution or other process issued from any court in this state, without the joint consent of both husband and wife ; and from and after the time when this act shall take effect [ 25th May, 1889] no such mortgage of personal property shall be valid unless executed by both husband and wife.''

This statute declares that it shall be unlawful for either husband or wife to create any lien by mortgage or otherwise upon exempt personal property without the joint consent of both, and that no such mortgage shall be valid unless executed by both. There are two precedent conditions requisite to a valid chattel mortgage on exempt personal property when the

marriage relation exists : (1) It must have been given with the joint consent of both husband and wife ; (2) it must be executed by both. Knowledge and acquiescence on the part of one are not sufficient ; there must be an active participation by both. It is not necessary, however, that both or either should actually perform the physical act of signing the instrument ; either may authorize the other or some third party to sign it for him or her, and, if so signed, it would be effective to bind such party.

It appears from the evidence that Alexander is Mrs. Rhodes's brother ; that Rhodes and wife commenced operating a hotel at Syracuse in April, 1899 ; that the furniture claimed by Alexander was purchased and placed in the hotel by him, and that it was intended either as a present or a loan to Rhodes and wife and used thereafter by them as though it was their furniture. This furniture was insured by Rhodes in his own name, and, when he and his wife removed from Syracuse to Larned, it was shipped by him in his own name to Larned and there placed in the hotel with his property and used in conducting the business. While at Larned, and prior to the execution of the mortgage in question, Rhodes mortgaged this furniture to A. H. Moffett. Alexander lived at Syracuse, and it does not appear that he was known in Larned, or was about the hotel while it was being operated.

Upon the issues joined between Alexander and Logan, the court instructed the jury as follows :

10. "The possession of personal property raises a presumption of ownership in the possessor. If, in fact, Alexander was the owner of the property which is the subject of this action, and he permitted defendant Rhodes and wife to remove the same from a distant part of the state to Pawnee county, and they afterward shipped the same to Larned, in said county,

in the name of the defendant J. A. Rhodes, and Rhodes and wife held themselves out to the public as the owners of the property, used the same in their business, and mingled it with other property purchased by them ; and if you further find that defendant Alexander made no effort to inform the public as to the rights in the property, then the court instructs you that it is your duty to weigh all said circumstances in detail, and if, after full and fair consideration, it is your belief, under the evidence and circumstances proved, that a man of ordinary business prudence, at the time Logan made the loan, would have been justified in acting on the belief that Rhodes and wife owned the property, it will be your duty to find for the plaintiff.

11. "Where one of two innocent parties must suffer for the wrong-doing of a third, the penalty must fall upon him that places power in said third party to do the injury. If both Logan and Alexander were acting in good faith, and Alexander permitted his property to be so used as to raise a reasonable belief in the minds of others that the property belonged to third persons, and such third persons afterward secured a loan from Logan on said property, then Alexander has no right to the possession of said property till Logan's loan is satisfied."

It is contended by Alexander that these instructions are erroneous and prejudicial; that by instruction No. 10 the jury were told that if Rhodes and wife were in possession of the goods at Syracuse and shipped them to Larned in the name of Rhodes, they were circumstances tending to discredit Alexander's claim of ownership.

It will be observed that there are more evidential circumstances enumerated in this instruction than those mentioned. The language is :

"If in fact Alexander was the owner of the property which is the subject of this action, and he permitted defendant Rhodes and wife to remove the

same from a distant part of the state to Pawnee county, and they afterward shipped the same to Larned, in said county, in the name of the defendant J. A. Rhodes, and Rhodes and wife held themselves out to the public as the owners of the property, used the same in their business, and mingled it with other property purchased by them ; and if you further find that defendant Alexander made no effort to inform the public as to the rights in the property. . . ."

These were circumstances to be considered in determining whether a man of ordinary business prudence would be justified in acting on the assumption that Rhodes and wife were the owners of the goods.

This objection is groundless. The possession of personal property is some evidence of ownership ; and certainly where one is put in the exclusive possession of such personal property as beds and bedding and other like household and hotel furniture, is knowingly permitted by the owner to mingle it with his own, ship it to a distant point in his own name with his own furniture, holding himself out as such owner, and there among strangers engage in business, using such property as his own, and no effort is made by the alleged owner to inform the public to the contrary, such circumstances are proper matters for consideration in determining whether a reasonably prudent man would be justified in acting on the belief that the persons thus in possession were the actual owners.

It is also argued that the giving of this, as well as instruction No. 11, was error, in that they leave out of consideration all question of the good faith of Logan in believing that Rhodes did own the property at the time he loaned the money. The eleventh instruction informs the jury :

"If both Logan and Alexander were acting in good faith, and Alexander permitted his property to be so

used as to raise a reasonable belief in the minds of others that the property belonged to third persons, and such third person afterward secured a loan from Logan on said property, then Alexander has no right to the possession of said property till Logan's loan is satisfied.''

These instructions, read together as they should be, inform the jury that the mortgagee under such circumstances must act in good faith, or he cannot recover. It is doubtful if it was necessary in this case for the court to go to that extent, as Logan's good faith was not questioned.

For the reasons herein stated, the judgment is affirmed as to Alexander and reversed and remanded for further proceedings as to E. A. Rhodes.

All the Justices concurring.