NOT DESIGNATED FOR PUBLICATION

No. 122,241

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK T. LIVENGOOD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES T. GEORGE, judge pro tem. Opinion filed June 11, 2021. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.


PER CURIAM: The critical issue in the prosecution of Defendant Mark Livengood for possession of stolen property—specifically a Shiatzu-Poodle named Hudson—was who owned the dog. After hearing evidence in a two-day trial, a jury sitting in Douglas County District Court convicted Livengood and in doing so necessarily concluded Hudson belonged to Megan Dechant, his former girlfriend, rather than to him. On appeal, Livengood has challenged the sufficiency of the evidence. The verdict was adequately supported by the trial evidence. We, therefore, affirm Livengood's conviction and sentence.

1

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). Given the issue and the standard of review, we dispense with a full cataloging of the trial evidence in favor of a focused narrative illuminating the ownership issue.

For about six years, Livengood and Dechant had a close dating relationship. But they maintained separate homes and did not comingle their finances. In January 2015, the two were in a pet store when Livengood spontaneously suggested he buy a Shiatzu-Poodle. Dechant agreed. She already had two dogs as pets. The trial evidence showed Livengood purchased Hudson, but Hudson always resided with Dechant. On occasion, Dechant would bring Hudson with her when she visited Livengood's home. The trial evidence indicated Livengood and Dechant shared at least some of the expenses associated with Hudson's care.

Livengood and Dechant ended their relationship on Christmas Day 2016, and the evidence hints the breakup was less than cordial. Hudson remained with Dechant.

In April 2018, Dechant let Hudson and the other two dogs out in her fenced yard as she got ready for work. Someone jumped the fence, grabbed Hudson, and took off. Dechant called the police to report the theft of Hudson. Various law enforcement agencies wound up investigating the dognapping and interviewing people who might have relevant information. Based on a review of her home security video, Dechant told investigators she did not think Livengood physically took Hudson; she suggested a

2

younger, more agile relative of his may have. In short order, other law enforcement officers talked to Livengood at his house. He told them he didn't know anything about the dog's disappearance and didn't want the dog. According to the officers, Livengood never affirmatively asserted some ownership interest in Hudson. The officers looked around the house and saw a large dog who didn't fit Hudson's description.

About a month later, the officers returned to Livengood's house. Livengood then had a dog that looked very much like Hudson but wore a collar with a tag for "Dallas." The officers took custody of the dog, and further investigation showed the dog to be Hudson, based on an identification microchip. Livengood told the officers the dog had been at his mother's house. The circumstances of how Hudson came to be at Livengood's house may be fairly characterized as murky. About 10 days after taking Hudson and confirming his identity, the officers returned to interview Livengood. According to the officers, he declined to say how he got Hudson because he might get somebody else in trouble. Livengood, however, then asserted he had an ownership interest in the dog.

The Douglas County District Attorney's Office ultimately charged Livengood with theft of property (Hudson) knowing the property to have been stolen by someone else, a violation of K.S.A. 2017 Supp. 21-5801(a)(4) and, in the alternative, with temporarily obtaining or exerting control of property without the owner's authorization, a violation of K.S.A. 2017 Supp. 21-5803(a). Both charged crimes were misdemeanors.

The jury heard the case in August 2019. Livengood testified in his own defense and, pertinent here, told the jurors he bought Hudson, never made a gift of Hudson to Dechant, and considered himself to be Hudson's owner. Dechant testified to her continuous possession of Hudson but never expressly characterized the dog as a gift from Livengood. The jury convicted Livengood of both charges, and the district court dismissed the conviction for temporary deprivation. That procedural aspect of the prosecution does not figure in this appeal. About a month later, the district court

3

sentenced Livengood on the misdemeanor theft conviction. Livengood has timely appealed.

Consistent with K.S.A. 2017 Supp. 21-5801(a)(4) and the elements of theft, the district court instructed the jurors they had to be convinced beyond a reasonable doubt that Dechant "was the owner of the property"; that Livengood "obtained control over the property knowing it to have been stolen by another" between April 23 and May 31, 2018; and that he intended to permanently deprive Dechant of the property.

Livengood doesn't directly dispute the evidence bearing on the latter two elements. His statements, recounted during the trial by the investigating officers, that he refused to tell them how he got Hudson in 2018 because it might create trouble for another person and his identification of Hudson as "Dallas" suggest he knew the dog had been taken without permission from Dechant and he didn't intend to return the dog. That's sufficient evidence to support those aspects of the charge.

Rather, as we have said, Livengood contends the State presented insufficient evidence that Dechant owned Hudson in the spring of 2018. As a general proposition, continuous and undisputed possession of personal property may be indicative of ownership. See *Alexander v. Logan*, 65 Kan. 505, 510, 70 P. 339 (1902) ("The possession of personal property is some evidence of ownership."); *Willcox v. Stroup*, 467 F.3d 409, 412-13 (4th Cir. 2006); 29 Am. Jur. 2d, Evidence § 284. Although that alone might be a slender reed upon which to rest a criminal conviction, there is substantially more here.

After Livengood and Dechant went their separate ways, Dechant retained possession of Hudson apparently without any objection from Livengood. That, too, buttresses Dechant being Hudson's owner, especially after Christmas 2016. Even assuming Livengood initially had some ownership interest in Hudson because he paid for the dog, ownership of personal property may be lost through abandonment. See

4

*Schoenholz v. Hinzman*, 295 Kan. 786, 793, 289 P.3d 1155 (2012). Abandonment of personal property is a matter of intent and presents a question of fact. 295 Kan. at 792-93. Intent, as a state of mind, often evades direct proof but may be established through circumstantial evidence. See *State v. Thach*, 305 Kan. 72, 82, 378 P.3d 522 (2016).

Here, Livengood's apparent failure to assert any ownership interest in or claim to Hudson between December 2016 and mid-2018 constitutes circumstantial evidence he abandoned whatever interest or claim he might have had. Moreover, one of the investigating law enforcement officers testified that Livengood explicitly disclaimed any ownership of Hudson in 2018. Although Livengood later asserted otherwise during the investigation and at trial, the jurors properly served as the arbiters of credibility to evaluate all of the evidence and to resolve precisely that kind of conflict. Our function as an appellate court does not extend to second-guessing those determinations. See *State v. Franco*, 49 Kan. App. 2d 924, 936-37, 319 P.3d 551 (2014).

Giving due play to the jurors' prerogatives as the finders of fact, we cannot say the guilty verdict and the requisite determination that Dechant owned Hudson in 2018 lacked sufficient evidence. We, therefore, affirm Livengood's conviction and the resulting sentence.

Affirmed.