924

(319 P.3d 551)
No. 107,814

STATE OF KANSAS, *Appellee,* v. CHRISTOPHER FRANCO, *Appellant.*

Opinion filed February 14, 2014.

*Sarah Morrison Rapelye*, of The Law Office of Stacey J. Lett & Associates, LLC, of Leawood, for appellant.

*Eric Fournier*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., BUSER and ATCHESON, JJ.

ATCHESON, J.: A jury in Finney County District Court convicted defendant Christopher Franco of aggravated criminal sodomy. He appeals on multiple grounds, including instructional error, insufficiency of the evidence, and prosecutorial misconduct in closing argument. We find no error and affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Given the issues, we do not linger over the facts. T.W.K., the victim, is a man in his mid-20s and has some mental disability. In April 2011, when the incident occurred, T.W.K. was living inde-

pendently with his girlfriend in an apartment in Garden City. T.W.K.'s girlfriend had been in a relationship with Franco and bore their child. T.W.K. and Franco became acquainted when Franco visited his son. During those visits, Franco sometimes demonstrated boxing techniques and wrestling moves with T.W.K. The record evidence clearly indicates Franco was larger, stronger, and physically more adept than T.W.K. and easily dominated him during those demonstrations.

On April 20, Franco called and asked to come over to the apartment. T.W.K. agreed even though his girlfriend and her son were out of town. Franco arrived with his current girlfriend. After awhile, Franco whispered something to the woman, and she left the apartment. According to T.W.K.'s account, Franco walked into the bedroom. He told T.W.K. to follow along because he had a surprise. Franco then forcibly performed anal intercourse on T.W.K., who repeatedly implored him to stop. Franco did not. Franco remained at the apartment until his girlfriend returned. The couple then left.

T.W.K. immediately contacted representatives of a social service agency that provided assistance to him because of his disability. He explained what happened. The agency representatives called the Garden City police. The police department began an investigation. Franco met with Detective Tanya Bradley and initially denied any sexual encounter with T.W.K. Later in the interrogation, Franco admitted having consensual anal intercourse with T.W.K. The county attorney charged Franco with one count of aggravated criminal sodomy, a severity level 1 felony offense under K.S.A. 21-3506, and with one count of misdemeanor battery under K.S.A. 21-3412. The battery charge apparently stemmed from a particularly forceful wrestling demonstration between Franco and T.W.K. The aggravated criminal sodomy count required the State to prove that T.W.K. was overcome by force or fear and, therefore, did not consent to the sex act.

At trial, T.W.K. described how Franco forcibly sodomized him. Testifying in his own defense, Franco told the jury that T.W.K. had suggested several times that they have sex and continued to pester him about it. So Franco said he finally agreed. During the sex act,

T.W.K. complained that it hurt. Franco testified he immediately stopped. The jury essentially had to resolve directly conflicting testimony from the participants as to whether T.W.K. willingly took part in the sex act.

The jury convicted Franco of aggravated criminal sodomy and acquitted him of battery. Based on Franco's criminal history and the severity of the offense, the district court imposed a standard guidelines sentence of 620 months in prison for the conviction. Franco has timely appealed.

## LEGAL ANALYSIS

### Jury Instructions

On appeal, Franco argues two errors in the jury instructions. First, he contends the district court should have given an instruction to the effect that no crime is committed when a willing participant in a sex act withdraws consent during the encounter and the other participant—the defendant in the criminal case—stops within a reasonable time. See *State v. Bunyard*, 281 Kan. 392, 414-15, 133 P.3d 14 (2006) (recognizing use of instruction in rape case). Second, Franco contends the district court should have instructed on criminal sodomy—anal intercourse between consenting adults of the same sex—as a lesser included offense. See K.S.A. 21-3505 (criminal sodomy). At trial, Franco neither requested the instructions nor objected to the district court's failure to give them.

The Kansas Supreme Court recently outlined the analytical steps in assessing a challenge to jury instructions in a criminal case. *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The appellate court determines: (1) reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. The determination of harmlessness under *Plummer* borrows the standards set forth in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), for assessing errors that compromise a criminal defendant's constitutional rights and those that do not. *Plummer*, 295 Kan. at 162-63. The *Plummer* analysis governs all challenges to jury instructions, even those raised initially

on appeal. But when a criminal defendant challenges jury instructions for the first time on appeal, the court must find any defect caused clear error to reverse. See K.S.A. 2013 Supp. 22-3414(3); *State v. Haberlein*, 296 Kan. 195, 203-04, 290 P.3d 640 (2012). The Kansas Supreme Court has recently restated the test for clearly erroneous jury instructions. See *State v. Mireles*, 297 Kan. 339, Syl. ¶¶ 5-7, 301 P.3d 677 (2013); *State v. Trujillo*, 296 Kan. 625, 630-31, 294 P.3d 281 (2013); *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012). In *Williams*, the court phrased the test as "whether [the appellate court] is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. 506, Syl. ¶ 5. The party disputing the jury instructions bears the burden of so persuading the appellate court. 295 Kan. 506, Syl. ¶ 5.

Turning to the first alleged error, we look to *Bunyard*, as do the parties. The *Bunyard* court recognized that under Kansas law, rape occurs when the victim has initially consented to sexual intercourse with the perpetrator and then clearly withdraws that consent during the act, so long as the perpetrator then fails to stop within a reasonable time. *Bunyard*, 281 Kan. at 414-15. What amounts to a reasonable time must be measured against the facts of a given case and presents an issue for the jury's determination. 281 Kan. at 414-15. In appropriate cases, the jury should be informed of that aspect of the law. 281 Kan. at 415-16; see *State v. Flynn*, 45 Kan. App. 2d 1113, 1115-16, 257 P.3d 1259 (2011) (noting requirement for *Bunyard* instruction and reversing conviction for failure to give one on the facts of that case), *rev. granted* January 20, 2012.

Because lack of consent is an element common to the crimes of rape and aggravated criminal sodomy, Franco argues the rule in *Bunyard* applies in this case and, therefore, the jury should have been instructed on the legal effect of a victim's withdrawal of consent. For purposes of evaluating the point, we assume jurisdiction and preservation consistent with the *Plummer* analysis. We find that *Bunyard* would govern in a prosecution for aggravated criminal sodomy, so an instruction would be legally appropriate. Our finding seems a safe one in that lack of consent is treated identically in the statutes criminalizing rape and aggravated criminal sodomy.

K.S.A. 21-3502(a)(1) (lack of consent, rape); K.S.A. 21-3506(a)(3) (lack of consent, aggravated criminal sodomy).

Franco's argument founders, however, on the third *Plummer* consideration—factual appropriateness in the particular case. In measuring factual propriety, we look at the trial evidence in a light favoring Franco's version of events and, in doing so, resolve any credibility disputes his way. See *Plummer*, 295 Kan. at 161-62. But a district court commits no error in failing to give an instruction unsupported in the record evidence. See 295 Kan. at 161 (no error in omitting instruction on lesser included offense without evidentiary support).

The purpose of a *Bunyard* instruction is to apprise jurors of the governing law in the uncommon rape prosecution: The victim initially agrees to have sex with the defendant and withdraws that consent during the act; and despite the victim's communicated unwillingness to continue, the defendant doesn't stop for some measurable time. The instruction basically informs the jurors that a defendant has a "reasonable time" to stop after consent has been withdrawn before continuation of the sex act will be considered criminal. In short, a *Bunyard* instruction assists jurors in assessing the legal implications when a defendant continues a sex act after the other participant no longer consents.

The instruction was factually inapposite and, thus, unnecessary here. In Franco's version, T.W.K. initially consented to the sex act; and as soon as he indicated he no longer wished to participate, they stopped. According to Franco, then, there was no measurable time the act continued after T.W.K. withdrew consent. So the jurors needed no guidance on how to determine the legal culpability of a defendant who chose to continue engaging in a sex act after the other participant had withdrawn consent. On that basis, the district court did not err in omitting a *Bunyard* instruction.

In this case, the district court instructed the jury on the elements of aggravated criminal sodomy using an appropriately tailored version of PIK Crim. 3d 57.08-B, which is identical to PIK Crim. 4th 55.070. With respect to consent, the instruction informed the jury the State had to prove "[t]he act of sodomy was committed without the consent of [T.W.K.] under circumstances when [T.W.K.] was

overcome by force or fear." The instruction adequately informed the jurors of the law to be applied to the factual scenario Franco described in his testimony. The instruction the district court gave effectively advised the jurors that the sex act and the lack of consent had to exist simultaneously to establish the crime of aggravated criminal sodomy. The jurors, thus, understood that if—as Franco contended—the act ceased as soon as T.W.K. protested, then the charged crime had not been committed. Simply put, in Franco's version, the act of sodomy was committed only with and during the time of T.W.K.'s consent. So if the jurors believed Franco's account, the jury instruction accurately stated the law and required them to acquit. A *Bunyard* instruction would not have added anything useful, since it addresses the legal implications of a discernible lapse of time between the withdrawal of consent and the cessation of the sex act—something that didn't happen here under any version of the events.

Even if a *Bunyard* instruction might have been appropriate under a peculiar stretch of the evidence, we cannot say that its omission was clearly erroneous as outlined in *Williams*, 295 Kan. 506, Syl. ¶ 5. As we have already explained, that instruction would not have been obviously applicable to the version of events Franco offered, and it certainly had no pertinence to T.W.K.'s account that he protested from the start. The jurors would have had to fashion a sequence of events matching neither version. And while jurors may choose to believe parts of a given witness' account of relevant events and disbelieve other parts, see *Ater v. Culbertson*, 190 Kan. 68, 73-74, 372 P.2d 580 (1962) (In assessing the credibility of a witness, jurors may accept part of his or her testimony and reject the balance as "they feel warranted in so doing."); *State v. Seward*, 163 Kan. 136, 145, 181 P.2d 478 (1947) (A jury has the prerogative to believe in part and disbelieve in part a witness' testimony or confession.), *aff'd on reh.* 164 Kan. 608, 191 P.2d 743 (1948), nothing suggests they did so here to come up with a scenario implicating the *Bunyard* rule on withdrawn consent. Unlike the *Bunyard* jurors, they did not pose a question about the instructions to the district court or otherwise request additional legal guidance during their deliberations. See *Bunyard*, 281 Kan. at 408-09. Absent a

tangible reason to believe the jurors realistically were contemplating a *Bunyard* scenario, we are not firmly convinced an instruction on that scenario would have led to a different outcome.

For his second instructional error, Franco contends the district court should have informed the jury it could have considered criminal sodomy, a misdemeanor, as a lesser included offense of aggravated criminal sodomy. At trial, Franco did not request an instruction on criminal sodomy, and the district court did not give the jury one.

Pertinent here, criminal sodomy, as set out in K.S.A. 21-3505(a)(1) and recodified in K.S.A. 2013 Supp. 21-5504(a)(1), prohibits consensual anal intercourse and oral-genital contact between persons of the same sex who are 16 years of age or older. See also K.S.A. 21-3501(2) (identifying those acts within the definition of sodomy); K.S.A. 2013 Supp. 21-5501(b) (recodification of definition of sodomy). Those acts are not crimes if they are performed by consenting individuals of the opposite sex who are at least 16 years old.

Under the *Plummer* analysis, Franco's challenge based on the omission of an instruction on criminal sodomy as a lesser included offense of aggravated criminal sodomy should be reviewed on appeal for clear error. See K.S.A. 22-3414(3). In light of the statutory language criminalizing each, all of the elements of criminal sodomy are also elements of aggravated criminal sodomy. Aggravated criminal sodomy materially differs from criminal sodomy insofar as it requires proof of lack of consent. That makes criminal sodomy a lesser included offense of aggravated criminal sodomy. See K.S.A. 21-3107(2)(b) (a crime is a lesser included offense if all its elements are some of the elements of the greater offense).

Commonly, an instruction on a lesser included offense is not only legally appropriate but statutorily required if the facts of the case support it. K.S.A. 22-3414(3). And the facts viewed favorably to Franco would warrant the instruction, since he cast the encounter with T.W.K. as consensual. All of that suggests the district court should have given the jury an instruction on criminal sodomy as a lesser included offense.

But this is an uncommon issue, as both sides acknowledge in debating it on appeal. As the parties have framed the debate, we must decide whether the criminal sodomy statute may be constitutionally enforced to proscribe and punish anal intercourse between consenting adults of the same sex. The State relies on *Lawrence v. Texas*, 539 U.S. 558, 578-79, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003), to argue that Franco could not have been charged with or convicted of criminal sodomy and, therefore, was not entitled to a lesser included offense instruction. The State, in effect, submits that a criminal sodomy instruction was legally inappropriate under the *Plummer* analysis. Franco counters that no Kansas appellate court has found the criminal sodomy statute unconstitutional and the Kansas Legislature effectively readopted the statute after *Lawrence* as part of the recodification of the criminal code enacted in 2010. So Franco contends the criminal sodomy statute remains presumptively valid, thereby warranting a lesser included offense instruction in this case. The State, in our view, has the better of the argument.

In *Lawrence*, the Court considered the constitutionality of a Texas statute criminalizing consensual anal intercourse and oral-genital contact between persons of the same sex. 539 U.S. at 563. Although the Texas statute characterized that conduct as "deviate sexual intercourse," its challenged proscriptions are legally indistinguishable from prohibitions in K.S.A. 21-3505(a)(1). The Court specifically noted that Kansas was one of nine states, including Texas, that had "singled out same-sex relations for criminal prosecution." 539 U.S. at 570 (citing L. 1983, ch. 109, sec. 5, amending criminal sodomy statute to limit its application to members of the same sex engaging in prohibited acts). A majority of the Court held that enforcing the Texas statute against consenting adults privately engaging in that proscribed activity violated a substantive liberty interest protected in the Fourteenth Amendment to the United States Constitution. 539 U.S. at 578. The Court reversed the convictions of Petitioners John Lawrence and Tyron Garner, who were prosecuted and convicted of violating the Texas statute by engaging in consensual anal intercourse in Lawrence's apartment.

The United States Supreme Court is the final arbiter when it comes to interpreting and applying the United States Constitution. Other courts—state and federal alike—are bound by stare decisis to abide by that precedent. See *State v. Ruggles*, 297 Kan. 675, 685, 304 P.3d 338 (2013) (recognizing United States Supreme Court decisions to be controlling as to Eighth Amendment challenge to sentence in criminal case); *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010) (Kansas Supreme Court bound by United States Supreme Court authority applying Fourth Amendment). Based on *Lawrence*, we, therefore, hold K.S.A. 21-3505 and its recodification in K.S.A. 2013 Supp. 21-5504(a) to be unconstitutional and, thus, unenforceable with respect to the conduct Franco contended he and T.W.K. engaged in—anal intercourse between consenting adults of the same sex conducted in private. The *Lawrence* decision also precludes criminalizing oral-genital contact between consenting adults of the same sex. 539 U.S. at 578-59. So K.S.A. 2013 Supp. 21-5504(a) would be unconstitutional if it were enforced that way, as well.[1]

[1] Justice O'Connor joined in the judgment in *Lawrence*, but she relied on an equal protection analysis to find the Texas statute unconstitutional because it treated gays and lesbians, as a class, disparately—the crime of deviant sexual intercourse, by definition, applied only to same-sex participants. 539 U.S. at 585 (O'Connor, J., concurring). Justice O'Connor applied rational-basis review to the Texas statute—the test most deferential to the constitutionality of legislative enactments—and found the measure wanting. 539 U.S. at 583 ("Moral disapproval of this group . . . is an interest that is insufficient to satisfy rational basis review under the Equal Protection Clause."); at 585 ("A law branding one class of persons as criminal based solely on the State's moral disapproval of that class and the conduct associated with that class runs contrary to the values of the Constitution and the Equal Protection Clause, under any standard of review."). We have no need to address the equal protection rationale, since five members of the Court struck down the Texas statute as contravening a liberty interest protected in the Due Process Clause. Nor do we make any assumptions about the constitutionally proper level of review to be applied under the Equal Protection Clause to state statutes or other enactments disadvantaging gays and lesbians as a class. See *United States v. Carolene Products Co.*, 304 U.S. 144, 153 n.4, 58 S. Ct. 778, 82 L. Ed. 1234 (1938).

Because Franco could not have been successfully prosecuted for criminal sodomy—the prosecution would have been constitution-

ally impermissible under *Lawrence*—we do not see how that could be a lesser included offense of aggravated criminal sodomy. Anal intercourse between consenting adults is no offense at all. And that was true when Franco went to trial.

Franco's rejoinders are unavailing. The United States Supreme Court's decision in *Lawrence* struck down as unconstitutional (and, thus, unenforceable) provisions of a Texas criminal statute that are legally indistinguishable from relevant portions of the Kansas criminal sodomy statute, K.S.A. 21-3505(a)(1), and its recodification, K.S.A. 2013 Supp. 21-5504(a)(1). There can be no reasonable doubt that *Lawrence* compels the conclusion that the Kansas criminal sodomy statute is unconstitutional and unenforceable to the same extent, and there can be no colorable argument otherwise. Contrary to Franco's suggestion, that conclusion need not be formally pronounced in a precedential decision from a Kansas appellate court to be valid. Neither Franco nor other criminal defendants would have been entitled to lesser included offense instructions on criminal sodomy during the decade-long lag between *Lawrence* and this case. Decisions of the United States Supreme Court construing federal constitutional rights don't need some endorsement from an intermediate state appellate court to kick-start them.

The Kansas Legislature's decision, made as part of the 2010 recodification of the criminal code, to readopt those portions of the criminal sodomy statute that violate the Due Process Clause doesn't resuscitate them. They still violate the federal Constitution. So that could not have been a valid basis to afford Franco a lesser included offense instruction.

Franco's argument runs counter to the purpose and effect of the Supremacy Clause, art. VI, cl. 2, of the United States Constitution. In pertinent part, the Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U. S. Const., art. VI, cl. 2. The Supremacy Clause renders state statutes and common law ineffective to the extent they materially

conflict with or impede federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992); *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712-13, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985) ("It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law.") (quoting *Gibbons v. Ogden*, 22 U.S. [9 Wheat.] 1, 6 L. Ed. 23 [1824]). To the extent the Kansas criminal sodomy statute contravenes liberty interests protected in the Due Process Clause of the Fourteenth Amendment, it cannot be enforced without violating the Supremacy Clause. And that is true no matter how often or by how wide a margin the Kansas Legislature readopts those provisions.

Franco has presented no viable argument for reversing his conviction based on the jury instructions.

*Sufficiency of the Evidence*

Franco argues the evidence presented at trial was legally insufficient to support his conviction. In reviewing a criminal defendant's challenge to the sufficiency of the evidence, an appellate court examines the record in a light most favorable to the State, as the party prevailing at trial, and in support of the jury's verdict. *State v. Hargrove*, 48 Kan. App. 2d 522, 558, 293 P.3d 787 (2013). The court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

At trial, T.W.K. testified to a version of the sexual encounter with Franco that, if believed, would establish the elements of aggravated criminal sodomy. Franco contends inconsistencies in T.W.K.'s testimony render his version of the encounter incredible, thereby negating evidence supporting the conviction—specifically the lack of consent. Franco compares testimony of T.W.K. that he physically resisted the sex act to the results of a medical examina-

tion of T.W.K. showing no substantial injuries. Similarly, T.W.K. testified at trial that Franco ejaculated, but a forensic examination of T.W.K. found no substantial biological evidence of ejaculation. In pretrial accounts of the offense, T.W.K. made conflicting and equivocal statements on that point. T.W.K. also gave widely varying estimates of the duration of the sex act. By the same token, T.W.K. consistently reported he did not consent to Franco's actions and protested as Franco violated him. T.W.K. said as much from the very first and did not waiver in that assertion. T.W.K. displayed obvious signs of emotional upset and trauma in the immediate aftermath of the encounter with Franco. All of that was for the jurors to consider.

And Franco's credibility in front of the jurors wasn't free of blemishes. Most notably, perhaps, he gave inconsistent renditions to law enforcement officers investigating the matter. Franco initially denied anything happened between him and T.W.K. He then admitted they had sex but claimed it was consensual. That is not an inconsistency likely born of an honest if faulty recollection. The jurors reasonably could take Franco to be a prevaricator. And they equally reasonably could conclude that had he been deliberately false in one claim, he may have been false in others. See *State v. Moreno*, 996 A.2d 673, 681 (R.I. 2010) (noting appropriateness of defense counsel's jury argument that a witness false in one thing may be considered false in all things); *State v. Corbett*, 158 Wash. App. 576, 589, 242 P.3d 52 (2010) (argument based on witness' inconsistent statements bears on credibility and reflects matter for jury to resolve).

Sorting out testimonial inconsistencies and evaluating credibility is a function uniquely entrusted to jurors. And "[t]he judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement." *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 (2012), *rev. denied* 298 Kan. 1204 (2013) (Atcheson, J., dissenting). The ability of the jurors to observe witnesses as they testify is integral to that evaluation. *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008). Appellate courts have no compa-

rable vantage point when they read a trial transcript, and that is precisely why they do not make credibility determinations.

In arguing insufficiency of the evidence, Franco basically submits that the questions about T.W.K.'s version of the sexual encounter were sufficiently pronounced that the jurors should have entertained a reasonable doubt about guilt. The argument, however, asks us to do precisely what we cannot—to weigh the evidence and to credit witnesses to reach a result at odds with the jurors' collective determination of the facts. We would impermissibly invade the province of the jurors as fact-finders to hold for Franco on this point.

### State's Closing Argument

Franco contends the prosecutor's closing argument to the jury misstated the law by impermissibly diluting the State's burden to prove guilt beyond a reasonable doubt. He points to the prosecutor's rebuttal argument. After Franco's lawyer hammered at T.W.K.'s credibility in her argument, the prosecutor went over the evidence supporting T.W.K.'s version and undermining Franco's. The prosecutor told the jurors that they had to decide who was more credible based on the evidence and invited them to conclude T.W.K. to be so.

On appeal, Franco specifically cites two portions of the prosecutor's rebuttal argument. First, the prosecutor told the jurors:

"The instructions tell you that you can use your common sense and experience, and you have to resolve the credibility of the witnesses. The credibility is an important issue here. We do have two versions of the events. The question is, Who do you believe more? Do you believe [T.W.K.] or do you believe Chris Franco?"

Later in the argument, the prosecutor said:

"[T.W.K.] has nothing to gain from Chris Franco's testimony. He does have something to gain from it. It's totally self-serving and it is totally in his own interest. The question comes down to credibility. We have two versions of the events. Who is more believable? Who do you believe?"

Although not directly mentioned in Franco's brief, the prosecutor also concluded the rebuttal this way: "[T.W.K.] is simply more

credible. That is what the evidence shows. And I ask you to convict the defendant of both offenses."

Franco submits the prosecutor's suggestion that the jurors find T.W.K. *more* credible than he diminishes the requirement that the State prove the elements of the offense beyond a reasonable doubt. We disagree.

The appellate courts use a well-established framework to assess allegations of improper closing argument in criminal cases. This court recapitulated the standard of review to be applied on this issue:

"Appellate review of alleged prosecutorial error in argument to a jury entails a two-step analysis. First, the appellate court must decide whether the comments fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. Second, if the prosecutor has exceeded those bounds, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury to the extent the defendant was denied a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009) (outlining mode of analysis); see *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009) (noting considerable range permitted advocates, including prosecutor, in arguing their causes in jury summations)." *State v. Schreiner*, 46 Kan. App. 2d 778, 793-94, 264 P.3d 1033 (2011), *rev. denied* 296 Kan. 1135 (2013).

An appellate court also must review "counsels' remarks in jury summations in light of the overall thrust of the point being made rather than as isolated snippets removed from the surrounding commentary—commentary that often lends material shading and depth to what might otherwise appear to be of questionable propriety standing alone." *Schreiner*, 46 Kan. App. 2d at 793; see *State v. Naputi*, 293 Kan. 55, 59-60, 260 P.3d 86 (2011). If the prosecutor makes an improper argument, an appellate court then deploys a three-part test to assess the magnitude of the harm and possible relief for the defendant:

" '(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error

had little, if any, likelihood of having changed the result of the trial], have been met.' [Citations omitted.]" *McReynolds*, 288 Kan. at 323.

The Kansas Supreme Court recently reiterated the test in *State v. Ochs*, 297 Kan. 1094, Syl. ¶¶ 1, 2, 306 P.3d 294 (2013).

In this case, the jurors faced a central task in determining whether T.W.K. consented to engaging in anal intercourse with Franco. As a step in that process, they had to decide which version of the encounter was more credible. If the jurors found Franco more believable, they necessarily would acquit. That conclusion would establish reasonable doubt. The prosecutor spent considerable time during argument parsing the evidence to demonstrate why the jurors should not come to that conclusion and should, rather, find T.W.K. to be more believable.

The prosecutor's argument was fair comment on how the jurors should examine the evidence in assessing either T.W.K. or Franco more credible. The prosecutor did not inappropriately argue that point, as by injecting a personal opinion on who was more believable. See *State v. Marshall*, 294 Kan. 850, 857, 281 P.3d 1112 (2012). But the prosecutor never told the jurors that simply finding T.W.K. more credible than Franco was sufficient to convict.

Rather, as the district court properly instructed the jurors, they had to find each defined element of the offense of aggravated criminal sodomy proven beyond a reasonable doubt. Nothing suggests the jurors abdicated that responsibility. See *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010) ("Appellate courts presume that a jury follow[s] the jury instructions."). Twice during closing argument, the prosecutor specifically told the jurors the State bore the burden of proving beyond a reasonable doubt the specific elements enumerated in the instruction on aggravated criminal sodomy.

In making their ultimate decision on a verdict, the jurors, of course, presumably considered the testimony and other evidence they found credible. The jurors, however, were not required to give the same weight or credit to each piece of physical evidence or each portion of any witness' testimony. They were to assess all of the record evidence to reach an ultimate conclusion on whether

the State had proven the elements of the offense beyond a reasonable doubt. See *Hargrove,* 48 Kan. App. 2d at 561-62.

The disputed argument from the prosecutor focused on how best to evaluate some of that evidence and why that evidence favored T.W.K.'s version of the material circumstances. The Kansas Supreme Court has found that sort of argument to be an unobjectionable means of addressing witness credibility. See *State v. Duong,* 292 Kan. 824, 830-31, 257 P.3d 309 (2011). The argument did not dilute the ultimate burden of proof placed on the State or mislead the jurors about it. The jurors were fully and properly instructed on the burden. And the prosecutor correctly stated that · burden in his argument. We find no error in the prosecutor's challenged remarks and need not undertake the second step of the process for gauging the prejudicial effect of an improper argument.[2]

[2]Franco argues that even if the purported errors he has asserted did not individually deprive him of a fair trial, their cumulative impact did, so his conviction should be reversed on that basis. See *McCaslin,* 291 Kan. at 732. Where, as here, a defendant has not shown error, there is nothing to aggregate to demonstrate prejudice, let alone prejudice warranting a new trial. See *State v. Foster,* 290 Kan. 696, 726, 233 P.3d 265 (2010) ("A single error does not constitute cumulative error[, and] . . . the *doctrine is inapplicable.*"). We necessarily reject any claim of cumulative error.

## Sentencing Considerations

Finally, Franco contends the district court improperly considered his criminal history in imposing sentence. Franco argues that the district court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. He principally relies on the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support that proposition. Franco also acknowledges the Kansas Supreme Court has rejected that argument and has found the State's current sentencing regimen conforms to the Sixth and Fourteenth Amendments to the United States Constitution with respect to the use of a defendant's past convictions in determining a presumptive statutory

punishment. See *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). We, therefore, decline his invitation to rule otherwise, especially in light of the Supreme Court's recent reaffirmation of *Ivory*. *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013).

Affirmed.