NOT DESIGNATED FOR PUBLICATION

No. 127,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDWARD J. HARRINGTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed February 13, 2026. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., HILL and ATCHESON, JJ.


PER CURIAM: A jury sitting in Sedgwick County District Court in February 2024 convicted Defendant Edward J. Harrington of rape, burglary, theft, stalking, and domestic battery—all directed at M.R., who was his wife at the time of the crimes. On appeal, Harrington challenges the district court's ruling excluding his proffered evidence that M.R. had previously made false accusations of sexual abuse and contends two comments the prosecutor made in closing argument to the jury deprived him of a fair trial. We find the prosecutor made an improper "golden rule" argument; the error was harmless.

1

Harrington's other points fail. We, therefore, affirm the jury verdicts and the resulting sentences.

## FACTUAL AND PROCEDURAL HISTORY

Given the issues on appeal, we need not delve deeply into the marital relationship and its deterioration. We offer an overview for context. Harrington is about 30 years older than M.R. They met when Harrington saw her dancing at a strip club and struck up a relationship with her. At some point, he rented an apartment for her, and she later became pregnant with their daughter. Harrington's then-wife divorced him, and he married M.R., who already had a child from an earlier relationship.

Their marital relationship rapidly deteriorated between March and May 2021. During that time M.R., along with her children, twice moved into a shelter for abused women. But she returned to the marital home periodically. During that time, M.R. alleged that Harrington raped her several times. She declined to pursue criminal charges until the last incident in late May. In the meantime, M.R. obtained a protection from stalking order against Harrington. And Harrington filed a petition for divorce but had not yet served it on M.R.

Harrington and M.R. each feared the other would abscond with their daughter. Harrington placed at least a couple of GPS devices on M.R.'s car and removed documents and possibly other property from the motor vehicle. The burglary and theft charges stemmed from his taking those items, and the stalking charge from his placing GPS devices on the car.

M.R. testified at trial and outlined the circumstances underlying the criminal charges. Pertinent to this appeal, a nurse testified about her physical examination of M.R. the day after the incident leading to the rape charge and the injuries she documented. Numerous law enforcement officers testified about various aspects of their investigation

2

of M.R.'s allegations. Harrington testified in his own defense and denied raping M.R. He told the jurors they engaged in rough consensual sex. Harrington admitting placing GPS devices on M.R.'s car and said he did so with M.R.'s consent—M.R. denied knowing about the devices, let alone consenting to their placement. Harrington admitted entering M.R.'s car and taking items belonging to their daughter.

As we have said, the jury convicted Harrington of rape and burglary—both felonies—and misdemeanors for theft, stalking, and domestic battery. At a later hearing, the district court sentenced Harrington to serve 155 months in prison for the rape conviction, reflecting a midrange presumptive guidelines sentence given his lack of any relevant criminal history, to be followed by postrelease supervision for life. The district court imposed lesser sentences on the other convictions and ordered they run concurrently with each other and with the sentence for rape. Harrington has duly appealed.

LEGAL ANALYSIS

Harrington has raised three substantive points on appeal. In the first, he contends the district court improperly excluded evidence that M.R. had purportedly lodged false accusations of sexual abuse against another person. In the second and third, he contends the prosecutor made improper comments in their closing argument to the jury. We take the points up in that order, adding facts and procedural history as necessary.

*Exclusion of Past Allegations of Sexual Abuse*

During the trial, Harrington asked the district court to allow him to cross-examine M.R. about allegations of sexual abuse she made against J.C., a foster parent of hers. As a minor, M.R. had been placed in the custody of the Department for Children and Families and, in turn, lived in a number of foster homes. Outside the presence of the jury and

3

through the prosecutor, M.R. acknowledged making the allegations. Harrington's lawyer proffered that he was prepared to call J.C. as a witness, and J.C. would deny he abused M.R. in any way.

Harrington's lawyer argued the evidence would bear directly on M.R.'s credibility and was especially relevant because it concerned allegations of sexual abuse comparable to M.R.'s assertion that Harrington had raped her. The lawyer also argued the evidence would not run afoul of the rape shield statute because the testimony would relate to *allegations* of sexual conduct, not actual sexual conduct. See K.S.A. 21-5502 (evidence of complaining witness' "previous sexual conduct" generally inadmissible in prosecutions for specified crimes, including rape). The district court denied Harrington's request, concluding that the testimony would devolve into evidence of sexual conduct prohibited under the rape shield statute.

On appeal, Harrington augments the argument he made to the district court by citing *State v. Barber*, 13 Kan. App. 2d 224, 766 P.2d 1288 (1989), and suggesting the denial of the proffered evidence impermissibly compromised his right to confront and cross-examine M.R. as a witness against him under the Sixth and Fourteenth Amendments to the United States Constitution. The gist of Harrington's argument remains the same—the proffered evidence bore directly on M.R.'s credibility and should have been allowed. We find the substantive issue has been preserved, although Harrington has expanded on the authority he contends supports his position.

Essentially, *Barber* holds that in a prosecution for a sex crime, the Sixth Amendment right to confrontation overrides the prohibition in K.S.A. 60-422 on specific instance evidence to prove the character trait for truthfulness or untruthfulness, so the defendant can show the jury that the putative victim made false accusations of sexual abuse or assault on a previous occasion. But the defendant must present evidence to the

4

district court establishing that "a reasonable probability of falsity exists" as a gatekeeping predicate to admissibility. 13 Kan. App. 2d at 227.

Assuming the continuing legal viability of *Barber*, Harrington had to present the district court with an evidentiary foundation supporting the falsity of M.R.'s allegations against J.C. before any of that could be admitted for the jury's consideration.

We may examine the sufficiency of the proffer as a statement of what Harrington intended to prove. Having done so, we find it lacking. At best, the proffer of J.C.'s testimony merely created a he-said, she-said credibility contest between J.C. and M.R. And the jury would have been left to sort out that peripheral conflict in addition to the credibility determinations bearing directly on the charges against Harrington. In short, simply producing J.C. to deny M.R.'s allegations against him would be insufficient to establish a predicate "probability of falsity" under *Barber*. There would be neither a probability of falsity nor a probability of truthfulness—the proffered evidence would be in equipoise awaiting a credibility determination from the jurors. And *Barber* does not impose that sort of initial decision on a jury since the evidence must already lean demonstrably toward falsity. We, therefore, affirm the district court's conclusion in denying Harrington's request. See *State v. Parks*, 312 Kan. 487, 489, 476 P.3d 794 (2020) (appellate court may affirm district court as right for wrong reason).

*Improper Closing Argument*

On appeal, Harrington contends the prosecutor made two improper comments to the jury during closing argument and the remarks deprived him of a fair trial. We assess this form of prosecutorial error using a framework laid out in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). See *State v. Anderson*, 318 Kan. 425, 437, 543 P.3d 1120 (2024) (recognizing and applying *Sherman* test). The *Sherman* standard first considers whether an error has occurred at all and then weighs any prejudice to the defendant

resulting from a demonstrable error. Lawyers, including prosecutors, enjoy a broad latitude in offering "fair comment" on the law and the evidence in closing arguments to a jury. If a prosecutor oversteps that line, prejudice to the defendant should be measured against the standard in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), for a constitutional wrong. The State, as the party benefiting from any error, must establish "'beyond a reasonable doubt'" that the improper argument "'did not affect the outcome of the trial'" taking account of the full trial record. *Sherman*, 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6).

The first comment Harrington challenges came in the prosecutor's discussion of the stalking charge. Under K.S.A. 21-5427(a)(1), the State had to prove Harrington engaged in a course of conduct directed at M.R. that would cause "a reasonable person" to fear for their safety and that M.R. herself was likewise fearful. The State rested the charge on Harrington's placement of GPS devices on M.R.'s car without her permission or knowledge. In support of that theory, the prosecutor posited this in their closing argument to the jurors: "Would it make you a little afraid if someone covertly put a tracking device where they could watch where you're going? Does that scare you?" Harrington contends the comment amounts to an impermissible golden rule argument. We agree.

A lawyer making a golden rule argument asks the jurors to place themselves in the position of one of the parties or the victim or members of the victim's family in a criminal case. *State v. Lowery*, 308 Kan. 1183, 1208, 427 P.3d 865 (2018); *State v. Ivy*, 65 Kan. App. 2d 727, 735-36, 571 P.3d 46 (2025). The approach improperly invites jurors to decide the case based on some personal stake or interest rather than on the admitted evidence and the governing law. A golden rule argument falls outside the wide latitude afforded lawyers in advocating for their clients in both civil and criminal cases. *Lowery*, 308 Kan. at 1208-09; *Walters v. Hitchcock*, 237 Kan. 31, 33, 697 P.2d 847 (1985).

6

The State counters that the comment does not constitute a golden rule argument. But that belies the obvious import of the language the prosecutor used. The remark plainly asks the jurors—the only "you" the prosecutor could be referring to—to place themselves in M.R.'s position and assess how they would react to Harrington's conduct if someone were to surreptitiously place GPS devices on their motor vehicles. This seems to be a prototypical golden rule argument. In its brief, the State tries to buttress its position by quoting a long tract of the prosecutor's closing argument containing the challenged comment. But that doesn't change the tenor of the comment; it simply shows the prosecutor didn't repeat the error.

Harrington's victory, however, is a fleeting one. We are persuaded beyond a reasonable doubt that the prosecutor's golden rule argument did not deprive Harrington of a fair trial, most particularly on the stalking charge. The remark was tersely embedded in an otherwise proper discussion of the law and the evidence. Moreover, Harrington admitted placing GPS devices on M.R.'s car. The conviction turned on the jurors' assessment of Harrington's and M.R's competing accounts of whether she consented to the placement of those devices. The jurors saw both of them as they testified and were cross-examined. The jurors found M.R. to be credible on this point. We are comfortable concluding that decision was guided by their independent credibility determination rather than the prosecutor's passing golden rule argument. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) ("'The judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.' *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 [2012] [Atcheson, J., dissenting]."). And we are, in turn, comfortable that the jurors similarly relied on their independent judgment in determining a reasonable person would be fearful in that circumstance. We decline Harrington's invitation to reverse any of his convictions based on the prosecutor's golden rule argument.

Harrington's second challenge to the prosecutor's closing argument goes to the rape conviction and requires some additional context. Tina Peck, the nurse who conducted the forensic examination of M.R. the day after she said Harrington raped her, testified at trial to her findings. Those findings included abrasions to M.R.'s genitalia. During the trial, Peck described the anatomy of the female genitalia in some detail and pointed out the locations of the abrasions on a chart or similar graphic aid. When asked by the prosecutor, Peck agreed that the abrasions were "inside" M.R.'s genitalia.

The location bears on penetration as an element of rape. As criminalized in K.S.A. 21-5503, rape entails "sexual intercourse" with the victim without their consent. In turn, for purposes of sex crimes, "sexual intercourse" is defined as including "any penetration of the female sex organ by . . . the male sex organ." K.S.A. 21-5501(a). And "[a]ny penetration, however slight, is sufficient." K.S.A. 21-5501(a). In short, abrasions "inside" the female genitalia would tend to establish penetration, as a legal requirement to find rape.

In closing argument, the prosecutor reminded the jurors that the abrasions were "inside" M.R.'s genitalia. On appeal, Harrington contends the comment misstates the evidence because the abrasions were on external portions of M.R.'s genitalia rather than on those portions within her body cavity. But Peck testified without objection and without contradiction that the abrasions were "inside." So the prosecutor's remark fairly recounted the admitted evidence.

Moreover, Peck's testimony appears to be correct in the context of "penetration" for purposes of proving rape. As Peck explained for the jurors, the outer most portion of the female genitalia is known as the labia majora. The abrasions Peck noted were on portions of M.R.'s genitalia inside the labia majora, making them consistent with the statutory definition of penetration of her genitalia. We find no error in this aspect of the prosecutor's closing argument.

8

*Cumulative Error*

On appeal, Harrington argues that cumulative error in the district court deprived him of a fair trial. See *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019) (if multiple trial errors collectively render trial unfair, appellate court may reverse resulting convictions). The point fails because we have found only a single error—the prosecutor's golden rule argument. There can be no cumulative error based on one trial error. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020).

Affirmed.